# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### May 12, 2015 Session

## KIM HARDY v. TOURNAMENT PLAYERS CLUB AT SOUTHWIND, INC. D/B/A "TPC SOUTHWIND", ET AL.

### Appeal from the Circuit Court for Shelby County
### No. CT00120114     Donna M. Fields, Judge

_____

### No. W2014-02286-COA-R9-CV – Filed July 2, 2015
_____

This is an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. In March 2014, Plaintiff food server/bartender filed an action alleging, in relevant part, that Defendants violated Tennessee Code Annotated § 50-2-107 by failing to pay her and other similarly situated employees all of the gratuities that they earned. Plaintiff further alleged that Defendants caused the gratuities to be shared with non-tipped employees. The trial court dismissed Plaintiff's claim under § 50-2-107 upon determining that the section does not permit a private cause of action in light of amendments to § 50-2-101 in 2013. We reverse and remand for further proceedings.

### Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Reversed and Remanded

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., joined. BRANDON O. GIBSON, J., filed a dissenting opinion.

Bruce S. Kramer, Amy E. Strickland, and Patrick H. Morris, Memphis, Tennessee, for the appellant, Kim Hardy.

Todd P. Photopulos and Diana M. Comes, Memphis, Tennessee, for the appellees, Tournament Players Club at Southwind, Inc. d/b/a "TPC Southwind", PGA Tour Golf Course Properties, Inc. and PGA Tour, Inc.

### OPINION

This appeal requires us to revisit whether Tennessee Code Annotated § 50-2-107, a section of the Tennessee Wage Regulation Act ("the TWRA"), provides a private right of action. The facts relevant to our disposition of the question certified for appeal

pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure are not disputed. Beginning November 2004, Plaintiff Kim Hardy ("Ms. Hardy") was employed as a food server/bartender by Defendant Tournament Players Club at Southwind ("TPC Southwind"), a private club with restaurant and banquet facilities. In March 2014, Ms. Hardy filed a class action complaint under Rule 23 of the Tennessee Rules of Civil Procedure against TPC Southwind, the PGA Tour, Inc. ("PGA Tour"), and PGA Golf Course Properties, Inc. ("PGA Properties"; collectively, "Defendants") in the Circuit Court for Shelby County.[1]

In her complaint, Ms. Hardy alleged that Defendants knowingly, willfully, fraudulently, maliciously, and/or with reckless disregard failed to pay her and other similarly situated employees all of the tips, gratuities, and/or service charges (collectively, "tips") to which they were entitled. She further alleged that Defendants distributed the tips among tipped employees and non-tipped employees, including kitchen workers and managers, in contravention of the TWRA and governing law. Ms. Hardy asserted claims for vicarious liability on the part of PGA Tour and PGA Tour Golf Course Properties; violation of the TWRA as codified at Tennessee Code Annotated § 50-2-101, *et seq.*, specifically § 50-2-107; breach of contract; conversion; fraud in procuring employment in violation of § 50-1-102; negligent misrepresentation in procuring employment in violation of § 50-1-102; aiding and abetting; and civil conspiracy. She sought compensatory and punitive damages.

Defendants filed a motion to dismiss in April 2014. Defendants asserted six grounds for dismissal in their motion, including the absence of a private right of action under the TWRA. Ms. Hardy filed a response in July 2014, and the trial court heard the matter on September 5, 2014. By corrected order entered November 12, 2014, the trial court determined that Tennessee Code Annotated § 50-2-107 does not provide a private right of action in light of the General Assembly's 2013 amendment to § 50-2-101, which provides for enforcement of the section by the Department of Labor and Workforce Development. The trial court further concluded that whether a private right of action exists under § 50-2-107 was an appropriate question to be determined by interlocutory appeal under Rule 9(a)(2) of the Rules of Appellate Procedure. It granted Defendants' motion to dismiss Ms. Hardy's claims under the TWRA and granted Ms. Hardy permission to appeal pursuant to Rule 9. Ms. Hardy filed an application for permission for interlocutory appeal, which we granted on December 19, 2014.

---

[1]Ms. Hardy alleged in her complaint that TPC Southwind is one club within a network of clubs regulated, overseen, supervised, and/or controlled by the PGA Tour and PGA Properties. That allegation is not an issue for the purposes of this interlocutory appeal.

**Issue Presented**

The question certified for interlocutory appeal in this case is whether Tennessee Code Annotated § 50-2-107 provides a private right of action notwithstanding the 2013 amendment to § 50-2-101 providing for enforcement of that section by the Department of Labor and Workforce Development ("the Department").

**Standard of Review**

A motion to dismiss for failure to state a claim under Rule 12.02(6) of the Tennessee Rules of Civil Procedure "challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) (citations omitted). It should be granted "'only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.'" *Id.* (quoting *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002)) (additional citations omitted). Whether dismissal for failure to state a claim is appropriate is a question of law. *Id.*

Whether a private right of action exists under a statute is a matter of statutory interpretation. *Brown v. Tennessee Title Loans, Inc.*, 328 S.W.3d 850, 855 (Tenn. 2010) (citation omitted). The interpretation of a statute also is a question of law. *Id.* Appellate review of a trial court's conclusions on questions of law is *de novo* with no presumption of correctness. *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 414 (Tenn. 2013) (citations omitted).

**Discussion**

We begin our discussion with the well-settled principle that our goal when construing a statute is to give full effect to the intent of the General Assembly, neither exceeding nor restricting the intended purpose of the statute. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010) (citations omitted). We must begin with the natural and ordinary meaning of the words used in the text, construing them in light of the general purpose of the statute and the context in which they appear. *Id.* (citations omitted). When the text is clear and unambiguous, we interpret the statute without going beyond the statutory language itself. *Id.* at 527 (citations omitted). If the text is ambiguous, however, we will resort to the familiar rules of statutory construction to ascertain the intent of the General Assembly. *Id.* (citations omitted).

If provisions within a statute create ambiguity, we endeavor to harmonize them in order to effectuate the overall purpose of the statute. *Id.* (citations omitted). We must construe the separate provisions reasonably in context of the statute, giving effect to each word, phrase, and sentence without basing our interpretation on any single one. *Id.*

3

(citations omitted). We will also endeavor to construe the statute so as to facilitate "the harmonious operation of the law." *Id.* (citations omitted.)

When attempting to resolve ambiguity in a statute, the courts may consider sources beyond the text of the statute itself, including public policy, contemporaneous or preceding historical facts, and the background and purpose of the legislation. *Id.* at 527-28 (citations omitted). We also may consider prior versions of the statute, legislative history, the caption of the act, and the overall statutory scheme. *Id.* at 528 (citations omitted). "However, no matter how illuminating these non-codified external sources may be, they cannot provide a basis for departing from clear codified statutory provisions." *Id.* (citation omitted).

Additionally, the courts employ several presumptions with respect to the legislative process. *Id.* at 527. We may presume that the General Assembly chose each word deliberately, that each word has a purpose and specific meaning, and that the statute has an intended purpose. *Id.* (citations omitted). We also presume that the General Assembly is aware of existing law and its own prior enactments regarding the subject of the statute and "knows the 'state of the law[,]'" including the way in which the statutes have been interpreted by the courts. *Id.* (quoting *Murfreesboro Med. Clinic, P.A. v. Udom*, 166 S.W.3d 674, 683 (Tenn. 2005)). We may also presume "that the General Assembly 'did not intend an absurdity.'" *Id.* (quoting *Fletcher v. State*, 951 S.W.2d 378, 382 (Tenn. 1997)).

In this case, Defendants urge that *Owens v. University Club of Memphis*, No. 02A01-9705-CV-00103, 1998 WL 719516 (Tenn. Ct. App. Oct. 15, 1998) (no perm. app. filed), in which this Court determined that Tennessee Code Annotated § 50-2-107 ("section 107" or "the section") permits a private cause of action, no longer is good authority in light of the 2013 amendment to § 50-2-101 ("section 101") and subsequent case law construing that section. Defendants' argument, as we perceive it, is that *Owens* is not binding and should be overruled. Thus, with the principles of statutory construction in mind, we turn first to the statutory text.

**The Statutory Text**

Prior to the 2013 amendment to section 101, sub-section 101(b) provided:

(b) It is unlawful for any proprietor, foreman, owner or other person to employ, permit or suffer to work for hire, in, about, or in connection with any workshop or factory any person whatsoever without first informing the employee of the amount of wages to be paid for the labor. *The amount agreed upon between employer and employee, or employee representative, shall constitute a basis for litigation in civil cases.* This does not apply to farm labor. Nothing in this section shall apply to railroad companies

4

engaged in interstate commerce and subject to the federal Railway Labor Act, compiled in 45 U.S.C. § 151 et seq.

Tenn. Code Ann. § 50-2-101(b) (2012) (emphasis added). The 2013 amendment to section 101 amended sub-section 101(b) to delete the reference to "litigation in civil cases." Sub-section 101(b) as amended in 2013 provides:

It is unlawful for any proprietor, foreman, owner or other person to employ, permit or suffer to work for hire, in, about, or in connection with any workshop or factory any person whatsoever without first informing the employee of the amount of wages to be paid for the labor. This shall not apply to farm labor. Nothing in this section shall apply to railroad companies engaged in interstate commerce and subject to the federal Railway Labor Act, compiled in 45 U.S.C. § 151 et seq.

Tenn. Code Ann. § 50-2-101(b) (2014). The 2013 amendment also added subsection 101(d), which provides:

The department of labor and workforce development shall enforce this section.

Tenn. Code Ann. § 50-2-101(d) (2014).

Tennessee Code Annotated § 50-2-107 currently provides, in relevant part:

(a)(1) If a business, including a private club, lounge, bar or restaurant, includes on the bill presented to and paid by a customer, member or patron an automatic percentage or specific dollar amount denominated as a service charge, tip, gratuity, or otherwise, which amount is customarily assumed to be intended for the employee or employees who have served the customer, member or patron, that amount shall be paid over to or distributed among the employee or employees who have rendered that service. The payment shall be made at the close of business on the day the amount is received or at the time the employee is regularly paid, or, in the case of a bill for which credit is extended to a customer, member or patron, payment shall be made at the close of business on the day the amount is collected or on the first day the employee is regularly paid occurring after the amount is collected.

(2) The payment shall not be reduced, docked or otherwise diminished to penalize an employee for any actions in connection with the employee's employment, if it is derived from a mandatory service charge or tip collected from customers, members or patrons.

5

(3)(A) This section does not apply to bills for food or beverage served in a banquet, convention or meeting facility segregated from the public-at-large, except banquet, convention or meeting facilities that are on the premises of a private club.

\* \* \*

(b) A violation of this section is a Class C misdemeanor. Each failure to pay an employee constitutes a separate offense.

Tenn. Code Ann. § 50-2-107 (2014). Section 107 contains no provision either limiting enforcement to the Department or explicitly creating a private right of action.

The trial court in this case determined that section 107 does not confer a private right of action in light of the 2013 legislative amendments to section 101, the first section of the TWRA. The trial court concluded that the General Assembly "removed any reference to the TWRA constituting a basis for litigation in civil cases" when it amended sub-section (b) of section 101, and that it added sub-section (d) to provide for enforcement by the Department. The trial court relied on federal and state court interpretations of section 101 after the 2013 amendment for the proposition that "there was never a private right of action under the TWRA."

In its November 2014 order, the trial court quoted *Abadeer v. Tyson Foods, Inc.*, 975 F. Supp. 2d 890 (M. D. Tenn. 2013) in support of its determination that the TWRA "'has never afforded a private right of action.'" (emphasis in the original.) The trial court observed that the express language of section 107 specifies a criminal sanction only; that the section does not expressly create a private right of action; and that the statutory language of section 107 is similar to the language of the Tennessee Title Pledge Act ("the Title Pledge Act" or "the TTPA"), which the Tennessee Supreme Court determined does not provide a private right of action. Noting that, in the absence of an express statutory provision providing a private right of action, a plaintiff bears the burden of establishing that the General Assembly intended to imply such a right, the trial court determined that Ms. Hardy failed to carry her burden on the question.

Ms. Hardy submits that the trial court erred by construing the amendment to section 101 as precluding a private right of action under section 107. She asserts that section 101, which applies to "workshops and factories," is not relevant to a claim under section 107, which commonly is referred to as "the Tip Statute." She contends that the General Assembly chose not to amend section 107 when it amended section 101, and that sub-section (d) in section 101 applies only to section 101, not to the entire TWRA.

Ms. Hardy cites *Carver v. Citizen Utilities Company*, 954 S.W.2d 34 (Tenn. 1997), for the proposition that, when separate sections of an act address different topics, a private right of action may exist under one section of an act although precluded by another. She asserts that section 101 clearly is not "a section of general provisions

6

applicable to the entire TWRA[,]" but specifically pertains to the right of employees covered by the section to be informed of the wages they are to receive. She further asserts that other sections of the TWRA, including §§ 50-2-103 & 104, contain provisions providing for exclusive enforcement by the Department, and that the General Assembly did not intend to preclude a private right of action under section 107. Ms. Hardy submits that this Court previously determined in *Owens* that a private right of action may be inferred in section 107. She further asserts that *Owens* remains good law because the General Assembly has not legislatively overruled it. Ms. Hardy also observes that the cases on which the trial court relied addressed section 101 and did not address section 107.

Defendants, on the other hand, assert that, because section 107 contains a criminal penalty and does not specifically provide a private right of action, no private right of action exists under the section. They also assert that the 2013 amendment to section 101 evidences legislative intent to reserve the right of enforcement of the TWRA to the Department, and cite the *Abadeer* court's review of the legislative history of the 2013 amendment to section 101 in support of their argument. Defendants also assert that the TWRA is "substantially similar to" the Title Pledge Act, which provides for enforcement through criminal and administrative penalties; that the TWRA as a whole provides for regulation of wage disputes, including disputes involving tips; that Ms. Hardy cannot rely on *Owens*, an unpublished case, in light of subsequent state and federal case-law; and that section 107 has never contained a reference to a private right of action. Defendants submit that the trial court correctly determined that Ms. Hardy failed to carry her burden of proof to demonstrate legislative intent to provide a private right of action in section 107 in light of the 2013 amendments and case-law since *Owens*. With the parties' arguments in mind, we consider whether the trial court erred by determining that a private cause of action may not be maintained under section 107 the TWRA.

### *Owens v. University Club of Memphis*

We turn first to *Owens v. University Club of Memphis*, No. 02A01-9705-CV-00103, 1998 WL 719516 (Tenn. Ct. App. Oct. 15, 1998) and the analysis to be employed by the courts when determining whether a statute indicates legislative intent to create a private right of action. Defendants contend that Ms. Hardy cannot rely on *Owens* to demonstrate that section 107 creates a private right of action. Defendants contend that *Owens* is not binding because it is an unpublished case and "respectfully submit[]" that the *Owens* court's analysis was "incomplete" in light of *Brown v. Tennessee Title Loans, Inc.*, 328 S.W.3d 850 (Tenn. 2010), and *Premium Financial Corporation of America v. Crump Insurance Services of Memphis, Inc.*, 978 S.W.2d 91 (Tenn. 1998). They assert, "[u]nder the proper analysis, contained within the *Brown* decision, [Ms.] Hardy bears the burden of showing legislative intent to imply a private right of action. She cannot point to *Owens* to do so."

7

The plaintiffs in *Owens* were food and beverage servers at the University Club of Memphis ("the Club"). *Owens*, 1998 WL 719516, at \*1. Like the Plaintiff in the current case, the plaintiffs in *Owens* were paid an hourly wage and received tips. *Id.* Like the Defendants in the current case, the Club added a surcharge to its bill when certain events were held at the Club. *Id.* The Club withheld a portion of the surcharge from the tipped employees and distributed part of the reserved amount to non-tipped employees. *Id.* The plaintiffs in *Owens* asserted, *inter alia*, that the Club's practices violated section 107. *Id.* at \*5. The trial court denied the Club's motions for a directed verdict and for a judgment notwithstanding the verdict on the jury's decision in favor of the plaintiffs' claims under section 107. *Id.* at \*5, 10.

On appeal in *Owens*, the Club asserted, in relevant part, that the trial court erred by denying its motions with respect to the plaintiffs' claims under section 107. Like Defendants in the case now before us, the Club contended that section 107 is a criminal statute and that no private right of action exists under it. *Id.* at \*10. Relying on the standard set-forth in *Buckner v. Carlton*, a published opinion of this Court that relied, in turn, on the United States Supreme Court's decision in *Cort v. Ash*, the *Owens* court stated that, when determining whether a private right of action exists for the violation of a criminal statute, the court must consider three primary factors:

> First, is the plaintiff one of the class for whose especial benefit the statute was enacted. Second, is there any indication of legislative intent, explicit or implicit, either to create or deny a private cause of action. Third, is the private cause of action consistent with the underlying purposes of the legislation.

*Owens*, 1998 WL 719516, at \*10 (quoting *Buckner v. Carlton*, 623 S.W.2d 102, 105 (Tenn. App. 1981) (quoting *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975))) (internal citations omitted). The *Owens* court stated, "'These factors are pertinent to determine whether the legislature intended for there to be a private right of action under the statute.'" *Id.* (citing *see Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979)). The *Owens* court noted that, unlike statutes intended to protect the public in general (including the statute at issue in *Buckner*),[2]

---

[2]The plaintiff in *Buckner v. Carlton* alleged a violation of Tennessee Code Annotated § 39-3203 (re-codified, as amended, at Tennessee Code Annotated § 39-16-403), which then provided:

> If any person, by color of his office, willfully and corruptly oppresses any person, under pretense of acting in his official capacity, he shall be punished by fine not exceeding one thousand dollars ($1,000.00), or imprisonment in the county jail not exceeding one (1) year.

*Buckner v. Carlton*, 623 S.W.2d 102, 105 (Tenn. Ct. App. 1981). The *Buckner* court held that no private cause of action existed under the statute. The *Buckner* court opined that, although "[a] private right of action would probably not interfere with the underlying purpose of the oppression statute, . . . the factor

section 107 "is intended to protect the rights of a certain class of people – service employees who receive tips as part of their compensation." *Id*. at *11. The court opined:

> On its face, the Tennessee Tip Statute is clearly intended to protect such employees by forbidding employers from keeping their tips. While the statute contains no express indication of legislative intent to create or deny a private right of action, a private action is consistent with the purpose of the legislation, and indeed complements the remedy in the statute by providing a mechanism to make employees whole.

*Id*. Thus, the *Owens* court determined that, although there was no express indication of legislative intent to create a private right of action in section 107, a private right of action could be inferred where the plaintiffs were within the class of people for whose benefit the statute was designed and where a private right of action was consistent with the purpose of the statute.

Accordingly, notwithstanding Defendants' assertion to the contrary, whether section 107 permits a private cause of action is not an issue of first impression. This Court's holding in *Owens* has not been overruled; the General Assembly did not amend section 107 when it amended section 101 in 2013; and the General Assembly amended section 107 in 2012 and did not legislatively overrule our holding in *Owens*.[3] Further, although not binding on this Court for the purpose of *stare decisis*, unpublished decisions are nevertheless persuasive authority in this Court. *Fortune v. Unum Life Ins. Co. of America*, 360 S.W.3d 390, 398 (Tenn. Ct. App. 2010); *Brown v. Knox Cnty.*, 39 S.W.3d 585, 589 (Tenn. Ct. App. 2000) (citing *see Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886 n.2 (Tenn. 1991)). Additionally, trial courts "are not free to disregard" an appellate court decision when it "speaks directly on the matter." *Holder v. Tennessee Judicial Selection Comm'n*, 937 S.W.2d 877, 882 (Tenn. 1996). As we recently observed:

> Historically, moreover, "many outstanding opinions of our intermediate appellate courts [were] consigned to oblivion and much scholarly research [was] lost to the profession." *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886 n.2 (Tenn. 1991). Today, although many "outstanding opinions" remain unpublished, the internet and on-line legal resources have rescued those opinions from oblivion. Additionally, as the courts have noted in the context of dicta, "inferior courts are not free to disregard . . . the pronouncement of a superior court when it speaks directly on the matter

---

weighing most heavily against an implied right of action is that the oppression statute as well as the criminal statutes concerning conspiracy and solicitation are intended for the protection of the general public." *Id*. The court observed, *"[w]hen courts have implied a private right of action from a criminal statute, the statute invariably is intended to protect a particular class of people." Id*. (emphasis added)

[3]The 2012 amendment to section 107 added the provision currently codified at sub-section 107(a)(3)(B).

before it, particularly when the superior court seeks to give guidance to the bench and bar." *Holder v. Tennessee Judicial Selection Comm'n*, 937 S.W.2d 877, 882 (Tenn. 1996); *Monday v. Thomas*, No. M2012–01357–COA–R3–CV, 2014 WL 1852958, at \*3 n.2 (Tenn. Ct. App. May 5, 2014). "[T]rial courts must follow the directives of superior courts, particularly when the superior court has given definite expression to its views in a case after careful consideration." *Holder*, 937 S.W.2d at 881; *see also Adbur–Rahman v. Bredesen*, No. M2003–01767–COA–R3–CV, 2004 WL 2246227, at \*6 (Tenn. Ct. App. Oct. 6, 2004), *aff'd* 181 S.W.3d 292 (Tenn. 2005) (cert. denied 547 U.S. 1147, 126 S.Ct. 2288 (2006)) (holding: the lower courts must adhere to the Tennessee Supreme Court's decisions, regardless of whether those decisions are published.). Unpublished opinions of this court "shall be considered persuasive authority." Sup. Ct. Rule 4(G)(1).

*State v. Anderson*, No. W2014-01971-COA-R3-CV, 2015 WL 2374575, at \*5 (Tenn. Ct. App. May 15, 2015) (footnotes omitted).

Defendants' argument, as we perceive it, is that the Tennessee Supreme Court's analysis in *Brown v. Tennessee Title Loans* has displaced the analysis of this Court in *Owens*. In *Brown*, the Tennessee Supreme Court considered whether the Tennessee Title Pledge Act codified at Tennessee Code Annotated §§ 45-15-101 to 120, permits a private cause of action against title pledge lenders.[4] The court determined that "the TTPA is a regulatory statute enforced through governmental remedies" and that "the implication of a private right of action would be inconsistent with [its] purposes as set forth by the

---

[4]The section allegedly violated in *Brown* was § 45-15-111(a), which provides:

> (a) A title pledge lender shall contract for and receive an effective rate of interest not to exceed two percent (2%) per month; additionally, the title pledge lender may charge, contract for, and receive a customary fee to defray the ordinary costs of operating a title pledge office, including, but not limited to, investigating the title, appraising the titled personal property, insuring the personal property when in the physical possession of the title pledge lender, documenting and closing the title or property pledge transaction, making required reports to local law enforcement officials, for all other services provided by the title pledge lender, advertising, for losses on title pledge or property pledge transactions, salaries, and for all other expenses incurred by the title pledge lender except those in subsection (b). The fee shall not be deemed interest for any purpose of law, and the fee may equal no more than one fifth (1/5) of the original principal amount of the title pledge agreement or property pledge agreement, or of the total unpaid balance due at the inception of any renewal of the agreement. The interest and fees shall be deemed to be earned, due and owing as of the date of the title pledge agreement or property pledge agreement and a like sum shall be deemed earned, due and owing on the same day of each subsequent thirty-day period.

Tenn. Code Ann. § 45-15-111(a) (2007).

10

legislature." *Brown*, 328 S.W.3d at 861. In reaching its decision, the *Brown* court recognized, first, that the TTPA contains no express language creating a private right of action in favor of a title pledger against a title pledge lender. *Id*. at 855. It then set-forth three non-exclusive factors to be considered by the court when determining "whether the legislature otherwise intended an intention to imply such a right in the statute." *Id*. (citations omitted). The factors identified by the court were:

> (1) whether the party bringing the cause of action is an intended beneficiary within the protection of the statute, (2) whether there is any indication of legislative intent, express or implied, to create or deny the private right of action, and (3) whether implying such a remedy is consistent with the underlying purposes of the legislation.

*Id*. As the Tennessee Supreme Court noted in *Brown,* it employed the factors set-forth by the United States Supreme Court in *Cort v. Ash*. *Id*. at n.4 (noting that the fourth factor articulated by the Court in *Cort v. Ash* – whether the action traditionally is relegated to state law – was not applicable).

The *Brown* court observed that the plaintiffs in that case were "within the protection of the TTPA and [stood] to benefit from its provisions[,]" but found nothing in the legislative history of the TTPA that implied legislative intent to imply a private right of action. *Id*. at 858. The court then examined the "underlying purposes" of the TTPA, noting that it "was enacted to establish a 'sound system of making title pledge loans through licensing of title pledge lenders,' which included the creation of 'licensing requirements.'" *Id*. at 859 (quoting Tenn. Code Ann. § 45–15–102(1)–(2)). The court observed that the TTPA imposed a criminal sanction and that *it also provided for suspension and revocation of the licenses of lenders who violate the statute*. *Id*. The court held: "In short, the TTPA was designed to regulate the title pledge lending industry, especially through the licensure of lenders, and was governmentally enforced through criminal and administrative sanctions." *Id*.

We applied the *Cort v. Ash* test in *Owens*, and the Tennessee Supreme Court specifically applied that test in *Brown*. Thus, to the extent that Defendants suggest that this Court's analysis in *Owens* should be disregarded as displaced by *Brown*, we must disagree.

We accordingly turn to Defendants' assertion that cases construing the TWRA following the 2013 amendment to section 101 support the trial court's judgment in this case. Defendants' argument, as we construe it, is that *Owens* has effectively been overruled, at least implicitly, by decisions subsequent to *Owens* and the 2013 amendment to section 101.

11

**Post-Owens Decisions and the 2013 Amendment**

In their brief, Defendants assert that *Abadeer v. Tyson Foods, Inc.*, 975 F.Supp.2d 890 (M.D. Tenn. 2013); *Cannon v. Citicorp Credit Services, Inc.*, No. 2:12-CV-88, 2014 WL 1267279 (E.D. Tenn. Mar. 26, 2014); and *Harris v. Tennessee Rehabilitation Initiative in Correction*, No. M2013-01858-COA-R3-CV, 2014 WL 1887302 (Tenn. Ct. App. May 8, 2014), cases construing the TWRA after the 2013 amendment that added sub-section (d) to section 101, support their argument that that no private remedy is available under section 107. Indeed, Defendants assert that these cases stand for the proposition that a private cause of action was *never* available under the TWRA. They further assert in their brief that "[t]he overall structure of the TWRA, too, lends weight to the inference that the Tennessee General Assembly intended for the Department of Labor and Workforce Development to regulate wage disputes." Defendants also contend that wage disputes include "tip-based wage disputes."

We begin our discussion of this argument with several observations. First, we note that decisions of federal courts on questions of state law, while persuasive, are not binding on this Court. As we previously have stated:

> When a federal court undertakes to decide a state law question in the absence of authoritative state precedent, the state courts are not bound to follow the federal court's decision.

*Townes v. Sunbeam Oster Co., Inc.*, 50 S.W.3d 446, 452 (Tenn. Ct. App. 2001) (declining to adopt the Sixth Circuit Court of Appeals' construction of Tenn. Code Ann. § 20-1-119). Thus, although we reaffirm the *Townes* court's expression of respect for the federal courts and the Sixth Circuit Court of Appeals in particular, we also reaffirm its statement that a federal court's "interpretation and application of state law is not binding on this [C]ourt." *Id.* (citing see *State ex rel. Elvis Presley Int'l Mem. Found. v. Crowell*, 733 S.W.2d 89, 97 (Tenn.Ct.App.1987) (declining to follow the United States Court of Appeals for the Sixth Circuit's construction of state property law)). Second, we observe that, like *Owens*, one of the federal court decisions and all of the state court decisions relied upon by Defendants are not published in the official reporter. Thus, all of the decisions relied upon by Defendants carry persuasive weight only in this Court.

Third, we note that section 107 was not the focus of any of the cases relied upon by Defendants. The plaintiffs in *Abadeer* sought to assert an action under section 101(b). *Abadeer*, 975 F.Supp.2d at 915. Section 101(b) requires that employees in workshops and factories be informed of the amount of wages to be paid for their labor. Tenn. Code Ann. § 50-2-101(b). *Cannon* similarly was an action brought pursuant to section 101(b). *Cannon*, 2014 WL 1267279, at *2. *Tennessee Rehabilitative* was an action filed in the Tennessee Claims Commissions by inmates who alleged that they were employees for purposes of the TWRA. *Tennessee Rehabilitative*, 2014 WL 1887302, at *1. The

12

plaintiffs in *Tennessee Rehabilitative* sought relief under section 101(b) and § 50-2-104, alleging that the Tennessee Department of Correction failed to inform them of the amount of their wages and misrepresented the amount of wages they were to receive. *Id.* at *2.

Fourth, as noted above, section 101 of the TWRA, as amended in 2013, contains an explicit provision with respect to enforcement. Section 101(d) unambiguously provides, "The department of labor and workforce development shall enforce *this section.*" Tenn. Code Ann. § 50-2-101(d) (emphasis added). Section 107 contains no such enforcement provision. Additionally, the General Assembly amended section 107 as recently as 2012 to add a provision that the "section does not apply to bills presented or charges paid by guests for accommodations and activities at a guest ranch." Tenn. Code Ann. § 50-2-107(a)(3)(B). With these observations in mind, we turn to the cases relied upon by Defendants.

The plaintiffs in *Abadeer* were hourly production employees at meat processing plants owned by Tyson Foods, Inc., and Tyson Fresh Meats, Inc. (collectively, "Tyson") in Tennessee. *Abadeer*, 975 F.Supp.2d at 895. When plaintiffs were hired, Tyson assured them they would be paid an hourly wage for all hours worked. *Id.* However, Tyson did not pay plaintiffs for time spent performing preparatory tasks that they were required to complete before clocking-in for their shifts (including donning sanitized coverings, sanitizing work areas, and collecting knives and other supplies) or for time spent on tasks they were required to perform after clocking-out (including cleaning-up and replacing gear and equipment). *Id.* at 896. Plaintiffs asserted that the pre-shift and post-shift tasks required a total of approximately 24-30 minutes; Tyson asserted the tasks required no more than 14 minutes. *Id.* The parties also disagreed as to whether plaintiffs performed production work for part of their meal periods. *Id.* at 898.

In November 2002, after considerable action by the United States Department of Labor, plaintiffs filed their action and asserted claims under the Fair Labor Standards Act, a claim for breach of contract, and claims under section 101. *Id.* at 899. The district court granted plaintiffs' motion for partial summary judgment on their breach of contract claim; denied plaintiffs' motion for summary judgment on their claims under the Fair Labor Standards Act; and denied plaintiffs' claim under Tennessee Code Annotated § 50-2-101(b) as moot. *Id.* at 919.

The portion of *Abadeer* relied on by Defendants in the current case relates to the *Abadeer* court's analysis of Tyson's motion asking the court to reconsider its earlier (2009) order denying Tyson's motion to dismiss plaintiffs' section 101(b) claim. *Id.* at 915. In its 2009 order, the district court concluded that section 101 provided a private right of action. *Id.* Tyson directed the court to the 2013 amendment to section 101, which provided for enforcement by the Department. *Id.* Tyson argued that the amendment should be applied retroactively; plaintiffs maintained that Tennessee's ban on

13

retrospective application of law prohibited applying the amendment to dismiss their claim. *Id.* Plaintiffs asserted that "the private right of action [was] a substantive right that cannot be eliminated retrospectively." *Id.* at 916.

The district court noted that when the Tennessee General Assembly amended section 101 in 2013 it did two things. First, it "removed language specifying that the wage amount agreed upon between employer and employee 'shall constitute a basis for litigation in civil cases[.]'" *Id.* (quoting Tenn. Code Ann. § 50–2–101 (2012)). Second, it "added language directing that '[t]he department of labor and workforce development shall enforce this section[.]'" *Id.* (quoting 2013 Tenn. Pub. Acts Ch. 240 § 2). The district court noted that one of the co-sponsors of the 2013 amendment stated in a committee hearing that

> a federal court decision ... changed the legislative intent of what the legislature originally intended when [it] passed the Wage Regulation Act years ago.... [T]he court said that [it] interpreted that section of the law to give employees a private right of action to sue their employer when there's [sic] wage disputes. The law has always been, in this state, that ... the Department of Labor would regulate that. So, we're just changing that back into compliance with ... what the original legislative intent was.

The district court stated:

> In this case, the pre-amendment version of § 50-2-101 did not expressly provide a private right of action. While it explicitly contemplated civil litigation, the pre-amendment statute did not specify who had the right to bring suit. If, as here, a statute does not expressly create a private right of action, the "next inquiry is whether the legislature otherwise indicated an intention to imply such a right in the statute.". . . . In 2009, presented with an ambiguous statute and only a modicum of circumstantial evidence as an interpretive guide, [the previous district court judge] drew a reasonable inference that the legislature intended to provide a private right of action.

*Id.* at 917 (quoting *Brown*, 328 S.W.3d at 855). After careful analysis of the factors to be considered by the court when determining whether a statutory amendment clarifies or changes a statutory provision, the district court concluded that the 2013 amendment was clarifying in nature. *Id.* at 918. The court concluded:

> Given that the 2013 amendment clarified the legislative intent behind an ambiguous law without substantively modifying it, the Court concludes that the remedial amendment applies retroactively.

*Id.* at 918-19. The court opined:

14

The employees do not have a vested right to enforce the statute because the statute does not—and never did—include a private right of action. [The court's] 2009 order inferred a right to sue, evidently contrary to legislative intent; the legislature has now made clear that employees may only file a complaint with the state agency to vindicate the substantive right § 50–2–101 grants. Accordingly, the Court will dismiss the employees § 50–2–101(b) claim. The employees do not have a vested right to enforce the statute because the statute does not—and never did—include a private right of action.

In *Cannon*, the plaintiffs worked at the defendant's call center in Tennessee. *Cannon*, 2014 WL 1267279, at * 1. In May 2013, they filed an action alleging that defendant forced them to work off-the-clock and during their lunch and rest periods but did not pay them for those hours. *Id.* Plaintiffs asserted claims for breach of contract, conversion, and unjust enrichment in addition to claims under the Fair Labor Standards Act and the TWRA. *Id.* The trial court stated that it "plan[ned] to dismiss [the TWRA claim] *sua sponte*" upon determining that the TWRA does not provide for a private right of action. *Id.* at *2. In so holding, the *Cannon* court relied on *Abadeer* that "there has never been a private action pursuant to the TWRA." *Id.*

We note, however, that the plaintiffs in *Cannon*, like the plaintiffs in *Abadeer*, relied on language contained in section 101(b) prior to the 2013 amendment to assert their cause of action. Like *Abadeer*, *Cannon* was not a section 107 action. We additionally observe that the *Cannon* court's interpretation of the *Abadeer* court's statement was somewhat overbroad. Read in context, the court's conclusion in *Abadeer* was limited to section 101 and cannot be fairly construed to encompass the entire TWRA. *Tennessee Rehabilitative*, also cited by Defendants, is not particularly instructive where we affirmed the trial court's dismissal of inmates' action for relief under section 101(b) and § 50-2-104 upon determining that they were not "employees" within the meaning of TWRA. *Tennessee Rehabilitative*, 2014 WL 188730, at *2.

We additionally observe that the district court's holding in *Abadeer* in 2009 "was the first time a court had interpreted § 50-2-101(b) as creating a private right of action." Edward G. Phillips and Brandon L. Morrow, *The Evolution of "Abadeer": The General Assembly's Clarification of the Wage Regulations Act*, Tenn. B.J. at 28 (Feb. 2014). The General Assembly responded by amending section 101 in 2013, deleting a phrase in subsection 101 (b) that referred to "litigation in civil cases" and adding subsection 101(d) to provide for enforcement by the Department. 2013 Tenn. Pub. Acts, c. 240 §§ 1, 2 (effective April 23, 2013). Thus, the only avenue currently available to a worker seeking to enforce section 101 is to file a complaint with the Department. Phillips, *supra*, at 29. Thus, we turn to Defendants' contention that the 2013 amendment to section 101 must be construed as encompassing section 107 in light of the overall structure of the TWRA.

## The Structure of the TWRA

In their brief, Defendants characterize section 107 as "dealing with tip-related wage disputes[.]" Their argument, as we perceive it, is that a dispute concerning tips under section 107 is equivalent to a dispute concerning wages under section 101, and that the provisions of sub-section 101(d) are equally applicable to section 107. Defendants further assert that the legislative history of the TWRA indicates that all wage regulations are to be enforced by the Department and that this interpretation is supported by the overall structure of the TWRA. They additionally contend that the *Owens* court's analysis of the structure of the TWRA was incomplete; that the TWRA is similar in structure to the TTPA; and that, like the TTPA, the TWRA does not provide a private right of action.

Section 101 applies to those wages that are paid to employees employed in "any workshop or factory . . . or any kind of establishment where labor is employed or machinery is used[,]" excepting "domestic service or agricultural pursuits[.]" Tenn. Code Ann. § 50-2-101(a) & (b). In general, it requires employers to "inform [an] employee of the amount of wages to be paid for the labor[,]" before permitting the employee to "work for hire." Tenn. Code Ann. § 50-2-101(b). By its terms, section 101 mandates pre-determined amounts that are to be paid for an employee's labor.

Section 107, on the other hand, is commonly called "the Tip Statute." *Owens*, 1998 WL 719516, at *1. In general, it requires employers in certain businesses who include on their bill amounts "customarily assumed to be intended for the employee or employees who have served the customer," to pay or distribute those amounts to the employee(s) who rendered the service. Tenn. Code Ann. § 50-2-107(a)(1). Unlike the pre-determined wage amounts required by section 101, a tip is "[a] gratuity for service given." *Black's Law Dictionary* 1712 (10th ed. 2014). A gratuity generally is defined as something "[d]one or performed without obligation to do so[.]" *Id*. at 816. We must disagree with Defendants' contention that "tips" under section 107 are equivalent to "wages" under section 101 for the purposes of the TWRA.

This distinction between wages and tips is underscored by the federal Fair Labor Standards Act ("FLSA"), which permits employers to pay employees who receive tips less than the minimum wage. 29 U.S.C.A. §§ 206(a)(1), 203(m). This "tip credit" provision provides, in relevant part, that all tips received by a tipped-employee must be retained by the employee, except that tips may be pooled "among employees who customarily and regularly receive tips." 29 U.S.C.A. § 203(m). On appeal of an action filed in the United States District Court for the Eastern District of Tennessee, the Sixth Circuit Court of Appeals observed that employees who may be defined as those who "customarily and regularly receive tips" are those employees who "are 'engaged in an occupation in which [they] customarily and regularly receive[ ] ... tips' because they sufficiently interact with customers in an industry (restaurant) where undesignated tips

16

are common." *Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294, 301 (6th Cir. 1998) (quoting 29 U.S.C.A. § 203(t) and citing 29 C.F.R. § 531.54).

We additionally observe that the General Assembly specifically provided for enforcement by the Department in other sections of the TWRA, including §§ 50-2-103 and 50-2-104. Tenn. Code Ann. §§ 50-2-103(j) & 50-2-104. Other sections of the TWRA, on the other hand, specifically §§ 50-2-102 and 50-2-110, explicitly create private rights of action. Tenn. Code Ann. §§ 50-2-102(b) & 50-2-110(b). Like section 107, § 50-2-106 provides that violation of that section of the TWRA is a Class C misdemeanor but neither explicitly creates nor explicitly prohibits a private right of action. Tenn. Code Ann. § 50-2-106(c). The courts have permitted private actions under § 50-2-106 (as currently numbered), however, noting that "it is apparent that the evil sought to be corrected [by the section, which was first enacted in 1887,] was the paying of . . . employees for labor performed with coupons, scrip, punchouts, store orders, or other evidences of indebtedness."[5] *Cambria Coal Co. v. Cooper*, 54 S.W.2d 708, 709 (Tenn. 1932); *see also Dayton Coal & Iron Co., Ltd.*, *v. Barton*, 53 S.W. 970 (Tenn. 1899). Clearly, both the courts and the General Assembly have treated the different sections of the TWRA as separate and distinct, and the courts have never construed the provisions of section 101 as applicable to the entire TWRA. Rather, each section of the TWRA must be construed in light of the General Assembly's intent when enacting it.

With respect to Defendants' assertion that the "overall structure" of the TWRA is similar to the Title Pledge Act, we observe that the Title Pledge Act includes a section specifically providing for the suspension or revocation of any license by the Commissioner of Financial Institutions for violation of "any provision[] of [the] *chapter* or any administrative regulation issued pursuant to [the] *chapter*," or for violation of "any law in the course of the title pledge lender's dealings as a title pledge lender." Tenn. Code Ann. § 45-15-107(a)(7) (2007 & Supp.2014) (emphasis added). Section 45-15-118, moreover, explicitly grants the Commissioner extensive authority to enforce the chapter,

---

[5]Tennessee Code Annotated § 50-2-106 currently provides:

> (a) It is not lawful for any employer, or agent, clerk or superintendent of the employer, who owns or controls a store for the sale of general merchandise in connection with the employer's manufacturing or other business, to attempt to control the employer's employees or laborers in the purchase of goods and supplies at the store, by withholding the payment of wages longer than the usual time of payment, whereby the employee would be compelled to purchase supplies at the employer's store.

> (b) No employee shall be required, as a condition of employment, to trade at a store specified by the employer.

> (c) Any person violating this section commits a Class C misdemeanor.

to enter into consent orders, and to seek civil and criminal penalties. Tenn. Code Ann. § 45-15-118(a) & (b). The section also provides:

> Any person aggrieved by the conduct of a title pledge lender under this *chapter,* in connection with the title pledge lender's regulated activities, may file a written complaint with the commissioner, who may investigate the complaint.

Tenn. Code Ann. § 45-15-118(c)(1) (emphasis added). It grants the Commissioner the authority to subpoena witnesses, administer oaths, examine any individual under oath, and to compel the production of any document relevant to an investigation. Tenn. Code Ann. § 45-15-118(c)(2). The section further provides:

> (3) If any person fails to comply with a subpoena of the commissioner under this *chapter*, or to testify concerning any matter about which the person may be interrogated under this *chapter*, the commissioner may petition any court of competent jurisdiction for enforcement.
>
> (4) The license of any title pledge lender under this chapter, who fails to comply with a subpoena of the commissioner, may be suspended pending compliance with the subpoena.
>
> (5) The commissioner shall have exclusive administrative power to investigate and enforce any and all complaints filed by any person that are not criminal in nature, which complaint relates to the business of title pledge lending.

Tenn. Code Ann. § 45-15-118(c)(3)-(5) (emphasis added). It also grants the Commissioner the authority, under circumstances identified by the section, to censure, suspend or bar any "person from any position of employment, management or control of any title pledge lender[.]" Tenn. Code Ann. § 45-15-118(d)(1). In short, the TTPA sets-forth a comprehensive regulatory system applicable to a narrowly defined industry, includes extensive enforcement provisions, grants the Commissioner broad enforcement authority, and prescribes penalties for violations of the act.

The TWRA, by contrast, does not contain similar enforcement provisions applicable to the entire act. Indeed, section 101(d) provides for enforcement by the Department of "*this* section." Tenn. Code Ann. § 50-2-101(d) (emphasis added). As noted above, some sections of the TWRA explicitly create a private right of action, some explicitly provide for enforcement by the Department, and other sections are silent with respect to enforcement.

The stated purpose of the regulatory scheme established by the TTPA, moreover, is explicit. As amended in 2005, the stated purpose of the TTPA is to:

> (1) Ensure a sound system of making title pledge loans through statewide licensing of title pledge lenders by the department of financial institutions;
>
> (2) Establish licensing requirements;
>
> (3) Provide for the examination and regulation of title pledge lenders by the department of financial institutions; and
>
> (4) Ensure financial responsibility to the public.

Tenn. Code Ann. § 45-15-102 (2007), 2005 Tenn. Pub. Acts, ch. 440, § 1. Prior to the 2005 amendment, § 45-15-102 as originally enacted stated that the purpose of the TTPA was to:

> (1) Ensure a sound system of making title pledge loans through licensing of title pledge lenders;
>
> (2) Provide for licensing requirements;
>
> (3) Ensure financial responsibility to the public;
>
> (4) Assist local governments in the exercise of their police power.

Tenn. Code Ann. § 45-15-102 (2000), 1995 Tenn. Pub. Acts, ch. 186, § 13. The TTPA sets-forth a regulatory scheme that "legalizes loans by licensed title pledge lenders on pledges of personal property certificates of title and pledges of titled personal property." *Brown*, 328 S.W.3d at 856 (citing *Premium Fin. Corp. of Am. v. Crump Ins. Servs. of Memphis, Inc.*, 978 S.W.2d 91, 94 (Tenn. 1998)); Tenn. Code Ann. § 45-15-104(a) (2000)). It is a *comprehensive* scheme that "provide[s] for . . . regulation of title pledge lenders by the department of financial institutions[.]" Tenn. Code Ann. § 45-15-102.

The varied sections of the TWRA, on the other hand, do not regulate a particular industry. Unlike the TTPA, the TWRA does not reflect a comprehensive regulatory scheme. Section 107, by its express terms, is applicable only to gratuities that are "customarily assumed to be intended for the employee or employees who have served the customer[.]" Tenn. Code Ann. § 50-2-107(a)(1). As noted above, section 107 simply does not contain a provision limiting enforcement to the Department. Significantly, as also noted above, the General Assembly amended section 107 in 2012, 14 years after this Court's decision in *Owens* holding that a private right of action may be inferred under section 107, and did not legislatively overrule *Owens*. It is well-settled that the courts

19

must presume that the General Assembly is aware of the state of the law when it enacts a statute. *E.g., Rodriguez v. State*, 437 S.W.3d 450, 453 (Tenn. 2014). The General Assembly has had ample opportunity to amend section 107 since this Court's holding in *Owens* and has chosen not to do so. We cannot agree with Defendants that the 2013 amendments to section 101 are indicative of legislative intent with respect to section 107.

**Burden of Proof**

Throughout their brief, Defendants emphasize that a plaintiff bears the burden of proof to demonstrate a private right of action under a statute that does not explicitly create one, and they strenuously submit that the trial court correctly concluded that Ms. Hardy failed to carry that burden in this case. "Determining whether a statute creates a private right of action is a matter of statutory construction[]" for the court, and "[t]he burden ultimately falls on the plaintiff to establish that a private right of action exists under the statute." *Brown*, 328 S.W.3d at 856; *Premium Fin. Corp. of America v. Crump Ins. Servs. of Memphis, Inc.*, 978 S.W.2d 91, 93 (Tenn. 1998). This burden of proof comports with "well established . . . Tennessee case law that the burden of proof is on the party having the affirmative of an issue, and that burden does not shift." *Big Fork Min. Co. v. Tennessee Water Quality Control Bd.*, 620 S.W.2d 515, 520 (Tenn. Ct. App. 1981) (citations omitted).

As noted above, whether a private right of action may be inferred in section 107 is not an issue of first impression. As discussed, this Court held that a private cause of action may be maintained under the section in *Owens*; the General Assembly amended section 107 in 2012 and did not legislatively overrule *Owens*; and under the plain language of section 101(d), the sub-section applies specifically to enforcement of section 101. The issue in this case is whether sub-section 101(d) may be inferred as legislatively overruling *Owens.*

In light of the lack of legislative action with respect to section 107, *Owens* remains good law. Further, as stated above, the trial court was not free to disregard *Owens* regardless of whether it is binding on this Court. Therefore, Ms. Hardy's reliance on *Owens* was not displaced, and she carried her burden to demonstrate that a private right of action exists under section 107.

Like the plaintiff in *Owens*, the plaintiff in this case is a member of the class that section 107 was enacted to protect – tipped-employees. Additionally, permitting a private cause of action under the section is consistent with the section's purpose "by providing a mechanism to make employees whole" and the statute does not provide a comprehensive regulatory scheme to protect the class of employees that the statute was enacted to protect. *Owens*, 1998 WL 719516, at *11. Most significantly, the General Assembly's decision not to overrule *Owens* when it amended section 107 in 2012 is compelling evidence of legislative intent on the issue. Accordingly, under the test set-

20

forth by the United States Supreme Court in *Cort v. Ash* and applied by the Tennessee Supreme Court in *Brown*, the existence of a private right of action may be inferred in section 107.

Finally, we are compelled to respond to our good friend and colleague's thoughtful dissent, with which we disagree. The Dissent disagrees with the Majority because "Tennessee Code Annotated section 50-2-107 does not provide for a private cause of action for at least three reasons: (1) the Tennessee Supreme Court, in *Brown*, determined that a substantially similar statute did not confer a private cause of action; (2) Title 50, Chapter 2, Part 1, as a whole, generally provides only for governmental enforcement, which is inconsistent with a legislative intent to incorporate a private cause of action; and (3) the Tennessee General Assembly ("General Assembly") knows how to create a private cause of action in addition to governmental enforcement and chose not to do so with respect to the Tennessee Wage Regulation Act."

First, as more fully discussed in the Majority opinion, the statute that was analyzed by the Tennessee Supreme Court in *Brown*, the Tennessee Title Pledge Act, is clearly not *substantially similar* and could be said to be inapposite to the Tennessee "Tip Statute", the statute at issue in this case and in *Owens*. As stated by the Majority, the *Brown* court found that the legislature created a comprehensive governmental regulatory scheme in the TTPA and that it provided for governmental enforcement. In fact, each of the cases referenced by the Dissent as being favorably discussed in *Brown* are also cases involving statutes that have a comprehensive regulatory scheme with specific governmental enforcement. Unlike the TTPA and the other statutes referenced in *Brown*, the TWRA is an amalgam of separate sections that were enacted for separate specific purposes related to the protection of employees. As the Dissent acknowledges, there are different enforcement mechanisms in almost every section of the TWRA. Some sections provide that the Department of Labor will provide enforcement, others do not. We think it is telling that the Supreme Court in *Brown*, after discussing the several cases addressing statutes setting forth comprehensive regulatory schemes, footnoted the *Owens* case with a "but see" footnote[6] and offered no disapproval of the *Owens* court's holding. The Tennessee Supreme Court, like the General Assembly, recognized that the "Tip Statute" is not a comprehensive regulatory statute and that *Owens*, which found that a private right of action exists under section 107, was decided 12 years earlier and was the state of the law.

Second, the Dissent states that Title 50, Chapter 2, Part 1, as a whole, generally provides only for governmental enforcement, which is inconsistent with a legislative intent to incorporate a private cause of action. As stated above, Title 50, Chapter 2, Part 1, is an amalgam of various sections, some enacted as early as 1887, and was enacted to ameliorate various workplace conditions. Its disparate sections include provisions

---

[6] *Brown*, 328 S.W.3d at 860 n.12.

21

addressing: informing the employee of the amount of wages to be paid for the labor (§ 101) (1915); payment of employees using coupons, scrip, store orders or other evidence of indebtedness (§ 102) (1899); requiring employees to trade at the company store (§ 106) (1887); the distribution of service charges or gratuities (§ 107, the "Tip Statute") (1983). The various sections were enacted over a 100 year period to protect specific groups of employees and, as the Dissent acknowledges, they contain different methods of enforcement. Moreover, that a private right of action exists under section 107 was determined by this court in *Owens* more than 17 years ago and that decision has never been overruled. We, therefore, believe it is incorrect to say that the chapter "as a whole, generally provides only for governmental enforcement."

Third, we agree with the Dissent that the General Assembly "chose not to create a private right of action with respect to the Tennessee Wage Regulation Act as a whole." We disagree, however, that the General Assembly did not do so with regard to section 107. The General Assembly can create a private right of action both by direct action and by inaction, and "the legislature's failure to 'express disapproval of a judicial construction of a statute is persuasive evidence of legislative adoption of the judicial construction.'" *Freeman Industries, LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 519 (Tenn. 2005) (quoting *Hamby v. McDaniel*, 559 S.W.2d 774, 776 (Tenn.1977) citing *see Forman, Inc. v. Nat'l Council on Comp. Ins., Inc.*, 13 S.W.3d 365, 373 (Tenn. Ct. App. 1999)). As we previously stated, this Court decided that the General Assembly intended a private right of action in section 107 in *Owens* in 1998. Since 1998, the General Assembly amended chapter 107 in 2012 and chapter 101 in 2013. In 2012, the General Assembly was aware of both *Owens* and *Brown* but chose not to disallow a private right of action to employees under the "Tip Statute" or to create any comprehensive regulatory scheme to protect and enforce the rights of these employees. On the other hand, when the General Assembly amended section 101 in 2013, it specifically removed the private right of action language previously contained in the statute and added: "The department of labor and workforce development shall enforce this section." We agree with the Dissent that the General Assembly knows how to provide for a specific method of enforcement. It simply chose not to limit enforcement in section 107.

It is clear that the Dissent is not persuaded by this Court's 1998 decision in *Owens* and finds it irreconcilable with the Tennessee Supreme Court's decision in *Brown*. We respectfully disagree with the Dissent, however, that *Brown* compels us to overrule *Owens*. The *Brown* court had an opportunity to disavow *Owens* in it's "but see" footnote and chose not to do so. Surely, we cannot infer a disavowal of *Owens* when each of the cases referenced by the Supreme Court in *Brown* involved a statute with a comprehensive regulatory scheme that provided for governmental enforcement. The Dissent appears to urge that *Owens* should be overruled. We respectfully disagree.

## Holding

In light of the foregoing, we reverse dismissal of Ms. Hardy's claims under Tennessee Code Annotated § 50-2-107. Costs on appeal are taxed to the Appellees, Tournament Players Club at Southwind, Inc. d/b/a "TPC Southwind," PGA Tour Golf Course Properties, Inc., and PGA Tour, Inc. This matter is remanded to the trial court for the collection of costs and for further proceedings consistent with this Opinion.

_____

ARNOLD B. GOLDIN, JUDGE